ALLEN *ex rel.* SPICKLER *v.* BLACK, Sheriff.

(*Circuit Court, S. D. Iowa, C. D.* August 11, 1890.)

INTOXICATING LIQUOR—ILLEGAL SALE—ORIGINAL PACKAGE.

A box containing whisky in bottles was shipped from Illinois to Iowa, and while in the latter state the box was opened by a resident of Iowa, who sold one of the bottles of whisky, contrary to the Iowa statute. For this he was convicted by a justice, and he applied to be released on *habeas corpus*, because his sale was protected under the interstate commerce clause of the national constitution. *Held*, that he should not be released, since the question whether the bottle or the box was the original package was sufficiently doubtful to make the proper remedy an appeal, rather than an application for *habeas corpus*.

At Law. On petition for *habeas corpus*.

*B. J. Salinger* and *F. A. Charles*, for petitioner.

*F. A. Church*, for respondent.

SHIRAS, J. Upon the petition of E. E. Spickler, averring that one Ed. Allen was illegally restrained of his liberty by the sheriff of Greene county, Iowa, a writ of *habeas corpus* was issued, and due return has been made thereto by the sheriff, setting forth that said Allen is in custody of said sheriff by virtue of a commitment issued by one R. P. Morden, a justice of the peace in Greene county, Iowa, and the counsel for the respective parties have agreed on the facts of the case, in substance as follows: That the relator, E. E. Spickler, resides in the state of Iowa, and is engaged in the business of acting as agent of parties residing in the states of Nebraska and Wisconsin in the selling of intoxicating liquors in the state of Iowa, shipped to him by them from said states; that said Allen was the clerk of said relator, employed to sell such liquors for relator at Cooper, in said county of Greene, Iowa, at a place provided for the purpose by relator; that said relator, Spickler, had authority

from his principals to employ subagents in the conduct of said business; that neither Allen nor Spickler had a permit to sell intoxicating liquors for any purpose under the provisions of the statutes of Iowa; that there was shipped to said Spickler at Templeton, Iowa, from his principal in Nebraska, a wooden box containing a number of bottles of whisky; that said box and contents were received by said Spickler at Templeton, Iowa, and were by him reshipped to Allen, at Cooper, without change in their condition; that when received by Allen at Cooper he opened said box, took therefrom the bottles of whisky, and sold one or more of the same; that said bottles were not removed from the box until they were sold by Allen; that an information was brought before a justice of the peace, charging Allen with selling intoxicating liquors contrary to law; that upon the hearing before the justice the evidence showed a sale of one bottle of whisky to Thomas Anderson, the said bottle so sold being one of those contained in the box shipped to Allen by Spickler, under the circumstances hereinbefore detailed; that the justice found Allen guilty of the offense charged, fined him $50, and in default of payment ordered his committal to the custody of the sheriff. On behalf of the petitioner it is claimed that Allen is protected in making sales of intoxicating liquors, under the circumstances of the sale to Anderson, under the interstate commerce clause of the federal constitution, as construed by the supreme court in the recent case of *Leisy* v. *Hardin*, 10 Sup. Ct. Rep. 681. In the opinion in that case it is pointed out that by the previous decisions of the supreme court it had been settled that the power of the state to tax or control the disposition of property brought from another state or from a foreign country did not commence until the importer had so acted upon it that it had become incorporated and mixed up with the mass of property in the state, or, to quote the language used in the *License Cases*, 5 How. 504:

"These state laws act altogether upon the retail or domestic traffic within their respective borders. They act upon the article after it has passed the line of foreign commerce, and become a part of the general mass of property in the state."

Applying these principles to the facts of the particular case before the court in *Leisy* v. *Hardin*, it was held that Leisy & Co. "had the right to import this beer into that state; and in the view which we have expressed they had the right to sell it, by which act alone it would become mingled in the common mass of property within the state. Up to that point of time we hold that, in the absence of congressional permission to do so, the state had no power to interfere by seizure or any other action in prohibition of importation and sale by the foreign or non-resident importer." The question of fact which will arise in each case is whether the property imported from another country or state has, by the act of the importer, become mingled with the common mass of property in the state. When so mingled it becomes subject to the laws of the state, may be taxed, or the sale thereof may be controlled or prohibited by such laws. Under the rule laid down in the *Leisy Case*, beer or liquors imported into Iowa, so long as they are kept in the original packages imported, and in the

hands of the importer, do not become part of the common property of the state, and while in that condition the importer has the right to sell the same. It does not seem probable that this matter of sale will be held to be the only test by which to determine when property passes from under the protection of the interstate commerce clause of the constitution. For instance, cattle or horses may be imported into Iowa by a citizen of another state, not for the purpose of immediate sale, but to be placed upon the farms in Iowa to be fed for one or more years. May not the same be taxed in Iowa, and be otherwise held subject to the laws of that state? In the *Leisy Case* the evidence showed that the beer owned by Leisy & Co., who were citizens of Illinois, was taken to Keokuk, Iowa, to be there sold in the original packages, and under these facts the court held that it was only when sold by the non-resident importer that the property became part of the common mass of property within the state, so as to become subject to the operation of the prohibitory law of the state. In other words, it is settled that a non-resident of Iowa may import into the state intoxicating liquors, and sell the same in the original packages, and that, so long as the same remain in the original packages in the hands of the importer, they do not become so intermingled with the common mass of the property in the state as to lose the protection afforded to importations by the interstate commerce clause of the constitution. Whether this clause will protect the importer in selling at retail, and whether the term "original package" is to be confined to the box, crate, or barrel in which the bottles of liquor are placed for convenience in shipping, or is to be construed to apply also to the bottles in which the liquors are contained, and whether any distinction exists in the rights of a non-resident importer as compared with those of a resident of the state, are questions which have not yet been passed on by the supreme court. The charge against Allen was for a violation of the statute of Iowa in that he had sold intoxicating liquors contrary to the provisions of the statute. The justice of the peace had jurisdiction to hear and determine the case. The evidence disclosed the fact that Allen was a clerk for Spickler; that Spickler resided at Templeton, Iowa, and Allen at Cooper, in the same county; that Spickler acted as agent for parties in other states, receiving liquors from them; that Spickler had received from a party in Nebraska a box containing a number of bottles of whisky; that he had reshipped the box to Allen, who opened the same for the purpose of selling at retail the bottles of whisky therein contained; that he sold one bottle thereof to one Anderson; that he had no permit to sell for any purpose under the provisions of the state statute, but that he claimed the right to sell the same under the protection of the interstate commerce clause of the federal constitution. The justice held that the clause in question could not be extended to include a case of this character.

Can it be denied that the case presented doubtful questions of the kind heretofore indicated? Can it be fairly said that the ruling of the justice was unquestionably wrong? Does not the case stand simply thus: If the ruling of the justice upon these debatable questions of law was right, then

the conviction and sentence of Allen was rightful; but if the justice erred in his view of the law, then the conviction was erroneous? Under the facts of this case, I do not think that the writ of *habeas corpus* is the proper proceeding to determine the questions involved. The decision of the justice complained of could have been carried by appeal to the higher state courts, and thence to the supreme court of the United States, and thus the rights of the state and of the defendant could alike have been protected. The present proceeding is before me as a judge and not as the circuit court, and hence no appeal can be taken to the supreme court from the ruling now to be made. Certainly I would not be justified in holding the action of the justice in sentencing Allen to imprisonment to be illegal and void unless such illegality is made clear, and I do not think it can be fairly said that such illegality is apparent. It may be that it will ultimately appear that the ruling of the justice in construing the rights of Allen under the federal constitution was erroneous, but it is certainly yet a debatable question, and under these circumstances I do not think he has established his right to be discharged by means of a writ of *habeas corpus.* The writ will be discharged, and Allen will be remanded to the custody of the sheriff.